# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**DOROTHY MOISE,**
 **o/b/o K.E.F.,**
                **Plaintiff,**

**-vs-**                                            **Case No. 6:08-cv-1701-Orl-31DAB**

**COMMISSIONER OF SOCIAL**
**SECURITY,**
                **Defendant.**
_____

## REPORT AND RECOMMENDATION

## TO THE UNITED STATES DISTRICT COURT

On behalf of her niece K.E.F., Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying the claim for Supplemental Security Income (SSI) under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, it is **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

### *I. BACKGROUND*

    **A.**    **Procedural History**

K.E.F. was born on March 2, 1997 addicted to cocaine; she was born in the twentieth week of pregnancy, and she weighed just two pounds at birth. R. 132, 137, 228, 289, 334. She was

hospitalized for three months and had heart surgery to correct a clogged main artery and a monitor was installed; she has a heart murmur. R. 228, 289, 334. Her birth mother lost custody of the Child and her two half siblings, and she lives with Plaintiff Dorothy Moise, her aunt. R. 245. Plaintiff originally filed an application for childhood Supplemental Security Income (SSI) benefits for K.E.F. on May 16, 1997. R. 95-97. On October 13, 2000, the Commissioner granted the application for SSI for K.E.F. (the "Child") and found the Child disabled since June 1, 2000. R. 17, 95-100 (neither the decision nor the notice is in the administrative record, but the ALJ references the decision). The SSA subsequently decided that the Child had improved in June 2005 following a continuing disability review of the Child at age eight. R. 40-41, 45, 101. Plaintiff filed this appeal, alleging that the Child continues to be disabled. Plaintiff's claim was denied initially and upon reconsideration. R. 48. On December 7, 2006, the Plaintiff timely requested a hearing before Administrative Law Judge, Philamena Jones (hereinafter referred to as "ALJ"). R.73-80. The initial hearing on May 1, 2007 was postponed to allow Plaintiff to obtain representation. R. 294-98.

Once Plaintiff's attorney, Richard Culbertson, Esq. was retained, he filed on June 29, 2007 a request for the ALJ to recuse herself from the hearing because Mr. Culberston had previously filed complaints of judicial misconduct in other cases against this ALJ, which were still pending. Doc. No. 12, Ex. A. The ALJ declined to recuse herself (R. 93, 94), and the hearing was held on August 7, 2007 R. 299-333.

In a decision issued on November 29, 2007, the ALJ found the Child had medically improved and ceased to be disabled as defined under the Act as of June 1, 2005. R. 17-33. Plaintiff filed a Request for Review of Hearing Decision/Order with the Appeals Council, arguing in part that the ALJ should have recused herself on the basis of bias and the Child's right to due process was

violated. R. 12-13, 291-93. The Appeal Council denied review on August 19, 2008. R. 7-10. Plaintiff filed this action for judicial review on October 3, 2008. Doc. No. 1.

### B. Medical History and Findings Summary

Shortly after her birth, the Child underwent cardiac surgery to correct a heart murmur through the implantation of a heart monitor. R. 228, 289. The Child was diagnosed with a Grade III/IV pansystolic murmur of the fourth left intercoastal space radiating through her chest and that she has a descrendo diastolic blow over the aortic valve. R. 213.

In the course of the 2000 disability evaluation, the Child's was administered an IQ test (Wechsler Intelligence Scale for Children), on which she was assessed with a Verbal IQ of 68, a Performance IQ of 67, and a Full Scale IQ of 65. R. 128, 334-37.

The Child was previously diagnosed with oppositional/defiant disorder (ODD); and a repaired coration of the aorta; the Child's mental impairment was found to meet listing 112.02 B.2., of 20 C.F.R. Part 404, subpart P, Appendix 1 as of October 13, 2001.

After reviewing the Child's medical records and the testimony of the Child and her aunt (Plaintiff), the ALJ found that medical improvement occurred as of June 1, 2005 because since that date, the impairments that the Child initially had as of October 13, 2000 no longer met or medically equaled the Listing level in that the Child no longer had ODD or an organic mental disorder. R. 21.

The ALJ found that the evidence established that the Child had no functional limitations from her previous (as of October 13, 2000) impairments of ODD and cardiac condition; she had no limitations in acquiring and using information (R. 23); in attending and completing tasks (R. 23); interacting and relating with others (R. 24); moving about and manipulating objects (R. 25); caring for herself; and less than marked limitation in the domain of health and physical well-being. R. 26.

The ALJ found that since June 1, 2005, the Child's ODD and cardiac impairments did not result in either "marked" limitations in two domains of functioning or "extreme" limitations in one domain of functioning, and consequently did not functionally equal the listings since June 1, 2005. R. 26. The ALJ further found that the Child's and Plaintiff's subjective complaints about the intensity, persistence, and limiting effects of the claimant's symptoms were not entirely credible. R. 29.

Instead, the ALJ found that the Child's only severe impairment beginning June 1, 2005 was an attention deficit hyperactive disorder (ADHD), which did not meet or medically equal a listed impairment. R. 26-27. She had less than marked limitation in acquiring and using information (R. 30); in attending and completing tasks (R. 31); interacting and relating with others (R. 31); caring for herself (R. 32); and no limitation in moving about and manipulating objects (R. 32);and in the domain of health and physical well-being. R. 26.

Accordingly, the ALJ determined that, beginning on June 1, 2005, the Child had not had an impairment or combination of impairments resulting in either "marked" limitations in two domains of functioning or "extreme" limitation in one domain of function; thus, her disability ended as of June 1, 2005, and she had not become disabled again since that date. R. 33.

Plaintiff now asserts two errors. First, Plaintiff contends that Plaintiff did not receive a full and fair hearing before an impartial ALJ. Second, Plaintiff contends that the ALJ did not properly apply the correct legal standard in finding that the Child did not meet Listing 112.05D and was not disabled. For the reasons that follow, the Commissioner's decision is **AFFIRMED**.

## *II. STANDARD OF DISABILITY AND STANDARD OF REVIEW*

In order for an individual under the age of eighteen to be entitled to Supplemental Security Income payments, the Child must have a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and. . .which has lasted or can be expected

-4-

to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i); 20 C.F.R. § 416.906. The rules[1] follow the three-step sequential evaluation, under which SSA will consider: (1) whether the child is working; (2) whether the child has a medically determinable "severe" impairment or combination of impairments; and (3) whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of an impairment in the listings. 20 C.F.R. § 416.924. Whether a child meets the "listing-level severity" standard is dependent upon whether the child has marked limitations in two broad areas of development or functioning or extreme limitation in one of those areas. 20 C.F.R. § 416.926a. Under the regulations for children, there are six domains used to determine a child's functional equivalence: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a.

In assessing whether the Child has "marked" or "extreme" limitations, the ALJ must consider the functional limitations from all medically determinable impairments, including any impairments that are not severe, as well as the interactive and cumulative effects of the child's impairment or combination of impairments individually in each domain. 20 C.F.R. § 416.926a(c). A marked limitation "seriously interferes" with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2). An "extreme" limitation is one that interferes very seriously

---

[1] On August 22, 1996, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("the 1996 Act"), which amended the statutory standard for children seeking SSI benefits based on disability such that a child seeking SSI benefits based on disability will be found disabled if he or she has a medically determinable impairment "which results in marked and severe functional limitations," and which meets the statutory duration requirement. *Brawdy v. Barnhart*, No. Civ.A. SA01-CA-0835F, 2003 WL 1955839, at *3-4 (W.D. Tex. Mar. 27, 2003) (internal citations omitted). The final rules became effective on January 2, 2001. *Id.*

with a child's ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(3).

However, in a cessation of benefits like the case at hand, the standard is applied using a modified standard. The Commissioner must first consider whether there has been "medical improvement" in the child's impairment. In a child's disability claim, medical improvement means a "decrease in the medical severity of [the child's] impairment(s) which was present at the time of the most recent favorable decision that [the child was] disabled or continued to be disabled." 20 C.F.R. § 416.994a(c). If there has been medical improvement, the SSA must consider whether the impairments(s) the child had at the time of the most recent favorable determination or decision now meets or medically or functionally equals the severity of the listing it met or equaled at that time. 20 C.F.R. § 416.994a(a)(1). If that impairment does not still meet or equal the severity of that listed impairment, the SSA will consider whether the child is currently disabled based on the current impairments, including any the child did not have at the time of the earlier most recent favorable determination. 20 C.F.R. § 416.994a(b)(3).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Walden v. Schweiker*, 672 F.2d 835, 838-39 (11th Cir. 1982)(internal quotations omitted).

The court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the SSA's decision. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987). Even if the court finds that the evidence weighs against the SSA's decision, the court must affirm if the

decision is supported by substantial evidence. *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir. 1981); *see also Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990); *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984). The court may not reweigh the evidence or substitute its own judgment, even if the court finds that the weight of the evidence is against the SSA's decision. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). While there is a presumption in favor of the SSA's findings of fact, no such presumption attaches to the ALJ's legal conclusions. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988); *Walker*, 826 F.2d at 999.

## *III. ANALYSIS*

**A.     Whether the Child's impairment met Listing 112.05D**

The Plaintiff argues that the ALJ erred by applying an incorrect legal standard in finding that the Child did not meet Listing 112.05D, for mental retardation. Listing 112.05D requires a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant physical limitation of function. 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listings), Section 112.05D.

On September 23, 2000, when the Child was three, Cydney Yerushalmi, Ed.D., CBA, administered the Wechsler Intelligence Scale for Children, and opined that the Child had a Verbal IQ of 68, a Performance IQ of 67, and a Full Scale IQ of 65. R. 128. Plaintiff contends that the Child's IQ scores at age three met the first prong of the Listing, and her impairment of ADHD meets the other "physical or mental impairment" prong of the Listing's requirement[2]. The Commissioner argues that substantial evidence supports the ALJ's finding that Claimant did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled the criteria of any

---

[2] Plaintiff does not argue that Plaintiff's cardiac condition meets the second prong.

listed impairment because the IQ scores were not valid and the Child's treating psychiatrist opined she was not retarded.

Plaintiff's contentions presume, without analysis, that the results of the IQ tests administered when she was three years old remained valid five years later, and Plaintiff devotes virtually all of her analysis to discussion of the severity of the Child's ADHD and whether it meets the second prong. There is no dispute that the Child suffers from ADHD. An April 2005 a consultative psychological examination performed by Dr. Beers revealed that Child has ADHD, manifested by hyperactivity, impulsiveness, and inattention. R. 21. An August 24, 2006 mental status evaluation by Michael Harrell, Ph.D. noted that the Child had difficulty maintaining grade appropriate levels due to her tendency to be overly active, tendency to be often moving or playing, and difficulty sustaining attention on tasks, and tendency to be easily distracted. R. 246. During an October 16, 2006 mental health screening at Lakeside Behavioral Healthcare, the Child's diagnosis was ADHD based on hyperactive and impulsive behavior, problems staying on tasks or focusing for extended periods[3]. R. 289. She was diagnosed with ADHD by her treating psychiatrist, M. Yousuf Bhaghani, M.D., on November 14, 2006. R. 281-82.

The ALJ found that since June 1, 2005, the Child has had ADHD manifested by hyperactivity, impulsiveness, and inattention, and it is a severe impairment (R. 26), but not of the severity described in Listings 112.00 et seq.. R. 27. Plaintiff argues the Child's ADHD imposes an additional and significant physical limitation of function and the ALJ applied an incorrect legal standard because the Child's ADHD sufficed to meet the second prong of the requirements of Listing 112.05D (mental

---

[3]At the administrative hearing, Plaintiff and the Child testified that the Child is hyper, and has difficulty learning, and in the forth grade she had gotten into two fights with other kids at school and her teacher told her that she had "ants in her pants." R. 309-12, 327.

retardation)[4] and the ALJ applied a more restrictive standard than the appropriate legal standard recognized in several cases cited by Plaintiff. Doc. No. 12 (citing cases).

The Commissioner argues as an initial matter that Listing 112.05D addresses only mental retardation, and the Child was initially determined to be disabled in 2000 based upon an oppositional defiant disorder (ODD), not based on mental retardation. Doc. No. 14. The Commissioner argues that the ALJ properly considered the issue of the Child's intellectual functioning in determining whether the Child was currently disabled as of June 2005, and found that Claimant did not have an impairment that met or equaled a listed impairment, including Listing 112.05. R. 27, Finding 8 (specifically citing Listings 112.02, 112.05, 112.08, and 112.11.

The Commissioner argues that Plaintiff's entire argument that Claimant meet listing 112.05D is based on invalid IQ testing results from September 2000. R. 334-37. Under the Regulations, the IQ scores must be *valid*, *i.e.*, the test measures what it is supposed to measure; reliable, *i.e.* consistent of results obtained over time with the same test and the same individual; contain appropriate normative data; and have a wide scope of measurement. § 112.00D(8). The Weschler series is listed as an example of a type of IQ test, but the regulations also caution that "IQ results must also be sufficiently current for accurate assessment under 112.05. . . . IQ test results obtained before age 7 are current for . . 1 year if at 40 or above." § 112.00D(10).

Dr. Yerushalmi's CE states that the Child's developmental milestones were within normal limits, although her birth mother was not present for them because the Child was in foster care for

---

[4] Although there is a separate listing, Listing 112.11, that applies to Attention Deficit Hyperactivity Disorder, Plaintiff does not argue that the Child's impairment meets Listing 112.11, which requires findings of marked inattention; and marked impulsiveness; and marked hyperactivity; and (for children more than 3 years of age) two of the following: marked impairment in age-appropriate cognitive/communicative function; or marked impairment in age-appropriate social functioning; or marked impairment in age-appropriate personal functioning; or marked difficulties in maintaining concentration, persistence, or pace. 20 C.F.R. pt. 404, subpt. P, app. 1, § 112.11. The ALJ found that Plaintiff had less than marked limitations in acquiring and using information (R. 30); in attending and completing tasks (R. 31); interacting and relating with others (R. 31); caring for herself (R. 32); and no limitation in moving about and manipulating objects (R. 32);and in the domain of health and physical well-being. R. 26.

twenty months after her birth. R. 334. Dr. Yerushalmi administered the Wechsler Preschool and Primary Scale of Intelligence-Revised Test; the results were Performance IQ of 67; Verbal IQ of 68; and Full Scale IQ of 65. R. 336. However, at that time, when the Child was three and a half years old, she "exhibited some behaviors that interfered with testing. She refused to answer some questions. She earned raw scores of zero on four subtests. She did not appear to have had much experience with writing or drawing and that had an effect on two subtests. She had no experience with non-inset puzzles." R. 336. Dr. Yerushalmi's diagnosis stated that "[a]lthough her test scores are low, it is felt that her behaviors interfered. In casual language, she sounds age-appropriate. She had good adaptive skills, without delay in that area. She would benefit from the presence of a behavior analyst in her classroom, to help the teacher cope with her oppositional behaviors." R. 336. The State Agency psychological consultant also indicated the results were invalid. R. 239.

Based on Dr. Yerushalmi's own analysis and the social security regulations, the IQ testing done on the Child when she was three and one half years old is not sufficient to find she met the Listing for Mental Retardation five years later.

In school, Plaintiff was in regular education classes and had no limits pertaining to school as of fourth grade, although she did have trouble staying on task and completing her homework and had to attend summer school, but she was promoted to fifth grade. R. 176, 188, 194, 324. She had no separate educational plan for exceptional student education. R. 205.

Moreover, there is abundant evidence to contradict a finding that she is mentally retarded, including the opinion of her treating psychiatrist, M. Bhaghani, M.D., at Lakeside Behavioral Health Care (R. 261 - November 2006) that the Child was not retarded. The ALJ properly relied on Dr. Bhaghani's opinion in finding that the Child did not meet the Listing § 112.05D, for mental retardation. R. 27. Dr. Bhaghani also noted that the Child had "intellectual functioning within normal

limits," intact memory, good insight and judgment, good progress at home and school. R. 261, 268, 272, 275, 278, 282.

The consulting examiner, Darlene Beers, Psy.D., who examined the Child on April 11, 2005, noted the Child had good recall of recent and remote events with no suggestion of severe short-term or long-term memory impairment; she had logical and coherent thought processes; she had no articulation problem; and Dr. Beers diagnosed ADHD. R. 228-30. Michael Harrell, Ph.D., who preformed a consultative examination on the Child in August 2006, noted the Child had difficulty maintaining grade appropriate levels, mostly due to her tendency to be overly active (R. 245), but his mental status examination findings are similar to those of Dr. Beers, and he assessed a global assessment of functioning (GAF) scale of 65. R. 246.

The ALJ's finding that the Child did not meet Listing 112.05D was based on substantial evidence.

**B.** *Whether the Commissioner violated Plaintiff's right to due process*

Plaintiff contends that the Commissioner violated Plaintiff's right to due process and a full and fair hearing before an impartial ALJ. Plaintiff contends that the Commissioner failed to properly handle her complaints of unfair treatment, misconduct, and bias by the ALJ. Plaintiff further complains that the Appeals Council did not look into her claim or include the results of the review as part of its decision in Plaintiff's case. Plaintiff's counsel identifies several other cases in which he represented clients that had less than satisfactory outcomes allegedly because he had filed motions to recuse or complaints about the ALJ in this case.

The Social Security Act "contemplates that disability hearings will be individualized determinations based on evidence adduced at a hearing." *Heckler v. Campbell*, 461 U.S. 458, 467 (1983). A claimant is entitled to a hearing that is both full and fair. *Clark v. Schweiker*, 652 F.2d 399,

404 (5th Cir. 1981). The regulations governing Title II dictate that "[a]n administrative law judge shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision." 20 C.F.R. § 404.940.

The Court has the power to affirm, modify, or reverse the Commissioner's decision and to remand the case to a different ALJ. 42 U.S.C. § 405(g); *see also Grant v. Shalala,* 989 F.2d 1332, 1346 (3d Cir. 1993); *Pearce v. Sullivan,* 871 F.2d 61, 63-64 (7th Cir. 1989); *Miles v. Chater,* 84 F.3d 1397, 1401 (11th Cir. 1996). Sentence four under 42 U.S.C. § 405(g) states that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Other courts have held that remand to a different ALJ may be an appropriate remedy, even without an express finding of bias. *See, e.g., Miles*, 84 F.3d at 1401 (ordering remand to a different ALJ because improper statements implying that a particular doctor "always found a disability" compromised the process); *Hartnett v. Apfel,* 21 F. Supp. 2d 217, 222-23 (E.D. N.Y. 1998) (ordering remand to a different ALJ without expressly finding bias, because of the ALJ's "troubling measure of insensitivity," and because the ALJ mischaracterized and misunderstood evidence).

Procedurally, when a claimant objects to the assignment of a particular ALJ to his or her case, he or she must notify the ALJ at the earliest opportunity. *Id.* If the ALJ withdraws, the Associate Commissioner for Hearings and Appeals or his delegate will appoint another ALJ to conduct the hearing. *Id.* If the ALJ declines to recuse herself, the claimant may seek reconsideration after the hearing by raising the issue before the Appeals Council. *Id.* In this case, the Commissioner did not allow an evidentiary hearing on the issue of bias and did not take statements from any witnesses in reference to Plaintiff's bias and unfair treatment complaint, and the Commissioner "refused to provide

-12-

audio recordings or transcripts of these [other] administrative hearings to these claimants' attorney [Mr. Culbertson]." R. 12 at 9. Plaintiff requests that her case be "remanded to Commissioner with specific directions to look into Plaintiff's complaint, by carrying out a thorough investigation and including the results of that investigation in the administrative record." R. 12. The Commissioner contends that, to be disqualifying, the alleged bias "must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966). The Commissioner argues that the ALJ's statements do not rise to the level of bias because "opinions formed on the basis of facts or events arising during the current or prior proceedings are not grounds for a recusal motion unless they display deep seated favoritism or antagonism." Doc. No. 14 at 6 (citing *Liteky v. United States*, 510 U.S. 540, 555 (1994)).

Plaintiff discusses at length the unsatisfactory outcomes in other cases before the same ALJ which allegedly showed her bias against counsel. As the Court has stated previously, the Court cannot reach out to consider other unrelated cases in deciding this one, in what would essentially be a mandamus action. *King v. Commissioner of Social Security*, Case No. 6:07-cv-537-Orl-22DAB.

As set forth in detail above, the Court finds that in this case the ALJ's failure to find that Plaintiff met Listing 112.05D (mental retardation) was based on substantial evidence, was justified, and did not show bias against Plaintiff or the Child.

### *IV. CONCLUSION*

The record in this case shows that the Child in this case was in regular classes and has passed each grade each year. The ALJ appropriately considered her circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act. For the reasons set forth

above, it is respectfully **RECOMMENDED** that the ALJ's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on December 29, 2009.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy